W. A. ALLEN AND WIFE, BESSIE ALLEN v. FRED D. CATES AND WIFE, MILDRED M. CATES.

(Filed 12 June 1964.)

**1. Boundaries § 2—**

A call to a natural object which is permanently located controls course and distance, and a well recognized corner of an adjacent tract is a call to a natural object within the meaning of this rule.

**2. Same—**

A call to a stone without additional description is insufficient to constitute a call to a permanently located natural object, and such call cannot control course and distance.

**3. Same—**

Where petitioners in a processioning proceeding introduce evidence fixing the corner of a contiguous tract, and the next call in their description is by course and distance to a stone (a corner in dispute), and the evidence is to the effect that the stone was small and had been moved, the disputed corner must, as a matter of law, be fixed at the distance called for from the established corner, with the result that petitioners' evidence is sufficient to support a finding of the corner as contended by them.

APPEAL by petitioners from *Clark, J.,* October 7, 1963 Session of FORSYTH.

This is a processioning proceeding to fix, as authorized by C. 38 of the General Statutes, the location of the line separating the lands of petitioners from the lands of the defendants. The disputed area contains 4.23 acres.

The parties stipulated: "This is a processioning proceeding, or disputed line case, and that the title to the lands is not in question." James Burrow, in 1963, made a map showing the lands of petitioners and defendants and the locations of the dividing line as contended by petitioners and defendants; petitioners' contention fixes the true location as shown on the map by the letters B-C. Defendants contend the proper location is as shown on the map by figures 3-2. The course of this line is north 87 degrees 30' west. The course of the line B-C is north 76 degrees 35' west.

When petitioners concluded their evidence, defendants moved for nonsuit. The court overruled the motion, being of the opinion that the correct location of the boundary line should be established.

Judge Clark held the burden was on petitioners to establish the true location of the line. Since they had not offered any evidence sufficient to establish a location different from that claimed by defendants, he gave peremptory instructions directing the jury to find the line 3-2 was the boundary line. The jury answered as directed.

*Buford T. Henderson for plaintiff appellants.*
*B. R. Browder, Jr., for respondent appellees.*

RODMAN, J. Petitioners alleged the parties traced their titles to W. C. Stewart who in 1919 purchased a tract containing 52 acres from J. W. Knott; the southern 40 acres of this tract was acquired by petitioners in 1942. Defendants acquired the balance of the 52 acres conveyed by Knott to Stewart.

We interpret the stipulations, the recitals in the judgment, and the briefs filed here as an acceptance of petitioners' contention that the parties trace title to a common source and that petitioners have the older and hence better title.

The description in petitioners' deed reads:

> "Lying and being in Old Richmond Township and bounded as follows: BEGINNING at a stone in Liza Hauser's line, running thence North 44 deg. East 144 feet to a stone; thence North 18 deg. 30′ East 388 feet to a stone; thence North 71 deg. 44′ East 377 feet to a black gum; thence South 88 deg. 30′ East still along Eliza Hauser's line 534 feet to *L. A. Strupe corner; thence North with Strupe's line 1558 feet to a stone, W. C. Stewart's corner; thence with the line of W. C. Stewart North 88 deg.. West 1061 feet to a stake, Stone Brothers' corner; thence South with Stone Brothers' line 2205 feet to the BEGINNING,* containing 40 acres, more or less, and being Lot No. 1 of the W. C. Stewart land."

The pertinent parts of the description are shown in italics. The controversy is solved by locating the line which runs north 88 degrees west 1061 feet from Strupe's line to a stake, Stone Brothers' corner. To locate that line, it is necessary to establish its beginning or, if that be impossible, to establish its western terminus and reverse that line. The deed gives this information about the beginning point of the disputed boundary. It is a stone in L. A. Strupe's line; it is 1558 feet north of Strupe's corner in Eliza Hauser's line; it is W. C. Stewart's corner.

A description by course and distance is an appropriate method of fixing the boundaries of a tract of land. If the beginning or some other corner is known, the boundaries can be located by running the given courses and distances. If, in addition to the course and distance, the deed contains other descriptive terms more definite and certain than the course and distance, the more certain description will control. This principle finds expression in the rule that a call for a natural object, permanently located will control course and distance. *Witherspoon v. Blanks,* 1 N.C. 157; *Swain v. Bell,* 3 N.C. 179; *Cherry v. Slade,* 7 N.C.

82; *Carney v. Edwards*, 256 N.C. 20, 122 S.E. 2d 786. As Hall, J., said in *Reed v. Shenck*, 14 N.C. 65; "To be of any avail they must in fact, or by way of reference, be fixed to the earth. They must be fixed to immovable objects. They may call for water courses, rocks, trees, or any thing immovable, that may be identified. Marked trees, the most common, are partly natural and partly artificial boundaries. * * * Movable things may become the boundaries of land, when they become immovable, as a wall or a pillar of stones, or any other fixed, stable substance."

A well known and recognized corner of another tract of land is more specific and certain than course and distance, and for that reason will control. *Carney v. Edwards, supra.*

The deed tells us that the beginning point of the land in controversy is W. C. Stewart's corner. It was so designated in a deed made by Stewart to W. M. Ball in June, 1927, but no evidence whatever was offered to show where Stewart's corner was and, since the lands of the petitioners and the defendants were all part of a single tract purchased by Stewart, it would seem that Stewart had no corner in the Strupe line prior to his deed to Ball in 1927. The deed says that the corner is a stone.

We are of the opinion that a call for a stone without additional description is insufficient to justify disregarding the call for course and distance. A stone may be small enough to be cast as a missile (John 8:7), or gigantic enough to be described as a mountain on which replicas of historic figures may be carved. Absent information as to size and how affixed to the soil, a rock falls into the category of a stake, having, as Hall, J. said in *Reed v. Shenck, supra,* "more fixity than feathers floating on water," but not that immobility required to control course and distance. Hoke, J. (later C. J.), in *Nelson v. Lineker,* 172 N.C. 279, 90 S.E. 251, compared the descriptive word "stone" to a stake. Petitioners' deed calls for stones at four of its corners. None are described.

Plaintiffs' witness, Myers, testified he occupied petitioners' land for a period of 7 years beginning in 1927. He described the stone called for at the end of the line running north 1558 feet as "a little dark looking round stone bedded down in the ground on a bank." It had been moved when he looked for it shortly prior to the trial. We conclude that the call for a stone at the end of the line 1558 feet from Strupe's corner is not sufficient to control and override the distance there given.

The parties seemingly are in agreement as to the location of L. A. Strupe's western line. If petitioners have offered any evidence with respect to the location of L. A. Strupe's corner in Eliza Hauser's line, the

court erred when it charged peremptorily to find adversely to petitioners, since the beginning corner of the line separating the land of petitioners from defendants is 1558 feet from Strupe's corner in the Hauser line.

When the evidence is viewed in the light most favorable to petitioners, we conclude there is some evidence from which a jury might find 3 on the court map (this, say defendants, is the beginning point of the boundary line) is only 1484.5 feet from Strupe's corner. If so, that point is not the beginning point, since petitioners' deed, as a matter of law, fixes the distance at 1558 feet.

The surveyor, Burrow, testified that he made surveys in the neighborhood in 1960. He was familiar with the properties; corners had been pointed out to him. There was a general reputation in the neighborhood as to the location of the Strupe and other corners.

After reading the description in the deed to petitioners, Burrow testified: "This call says 'to L. A. Strupe corner.' I have to a stone, Dallas Gibson's northeast corner." Thereupon the court intervened and said, "Let me stop you right there, 'Strupe corner.' Now, is that the stone that you have referred to as being the agreed southeast corner?" Answer: "Yes sir." Question: "That is where the stone is located?" Answer: "That's right."

Tending to corroborate the testimony of Burrows is the testimony of the witness Myers who testified that the dividing line "ran into a branch, ran up kind of in the branch a little ways." The map shows a branch between figure 3 and letter B. If Myers' testimony is accepted as correct, the beginning point in the disputed line would be somewhere between 3 and B.

When the beginning point of the disputed boundary has been properly located, the line will be run by course as set out in the deed to petitioners. The only way that course can be changed would be to establish Stone Brothers' corner and to show that it was well known and recognized in the community. When the western terminus of the disputed line has been established, its distance from the beginning corner of petitioners' land is immaterial. If that point is less than 2205 feet, it would stop at the beginning; if more than 2205 feet, it would extend to the beginning. *Harris v. Raleigh,* 251 N.C. 313, 111 S.E. 2d 329.

New trial.